Case 25-5396, Amy Dichiara v. Summit Medical Group, Inc. et al. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant when ready. Good morning. Good morning, Your Honor. Chris Wiest for the appellant, Dr. Amy Dichiara. If I can reserve five minutes for rebuttal. Your Honor, there are a number of issues in this case, and I know it was originally set for an on-brief submission, and then argument was ordered. I intended to address really two issues this morning, but if there are questions from the panel on any other issues, I'm prepared to address those. First, did the district court err in granting defendant's summary judgment on Dr. Dichiara's Title VII and ADA retaliation claims, and conversely failing to grant her cross-motion on the same issue, especially in light of admissions by the defendant's decision-makers, that he believed that she was assisting and participating in the underlying Title VII and ADA suit? And then second, did the district court err in granting defendant's summary judgment on Dr. Dichiara's discharge against public policy claims and failing to grant her cross-motion by effectively turning it into a qualified immunity case, requiring us to show on-point precedent, rather than, as this court directs on state law claims, to predict what the Kentucky Supreme Court would do? Obviously, every single case in court that has addressed similar issues to what the defendants raised have come out the other way and in favor of our position, and so there's no reason to believe the Kentucky Supreme Court is going to chart a different course on those claims. Turning to the first issue, the Title VII and ADA retaliation claims, there are admissions by Dr. Pritchard, and everybody acknowledges he was the decision-maker, in which he is asked, do you think she was participating? Do you think that she was assisting the law firm in bringing these claims? And his acknowledgment on that at 287 of his deposition, page ID 1854, was yes. Yes, I think she was doing that. He... So just help us out. So participation is the key word, right? Yes. In the retaliation provision. It's not, you wouldn't say investigation, right? I mean, that's like subpoenas and so forth. So you have to participate, and investigation is the first word. Would you say that applies? I don't think so. Okay, I agree with you. I agree with you. So, and then proceeding, you would say it's this future case, even though there's no case yet when she conveys this information? Right, it's imminent. That's right. It's imminent. And so because it's imminent... Even though he's not her lawyer? Well, Your Honor, that's an interesting question. Obviously, she says, I didn't intend for him to, quote, represent me, but she's also getting advice from him and the firm. There's this exchange of advice, and I think if a lawyer is entitled to investigate a claim prior to bringing it, I think plainly what's anticipated is bringing claims at that point. Obviously, she asks that this information be kept confidential, right? Confidentiality gets breached when this gets attached to the lawsuit. I think Judge Larson is going to jump in on that point. No, yeah. I just want to be very clear on what you think the act of participation is. It's the sending of the emails? I think so, that is used to advance the lawsuit. The lawsuit that is yet to be filed. But is imminent. Well, does she know it's imminent? Yes. How do we know that she knows? Because there's this email exchange to the groups. Everybody acknowledges it's imminent, right? And, in fact, the defendants acknowledge it. I mean, we know that there was a prior suit, but that suit ultimately gets voluntarily dismissed. But she also says, I don't want to be part of your lawsuit. I don't want to participate in this lawsuit. And says, don't use it. Don't use this stuff. It's supposed to be kept confidential. She does. Let me turn to the termination letter, because I think if there's any doubt about what's forthcoming, the defendants' admission about what's forthcoming and that they knew that it was forthcoming at the time that the emails were exchanged. This is at document 4459, page ID 1032, 1033. Your unauthorized disclosure of the subject emails to a law office, which had already sued SEP, and which was actively preparing to sue SEP again, and which emails related to the subject matter of the lawsuits. That was the basis of the termination. So she was sued for assisting them, participating, in an act that's about to occur. And if we think about it, it cannot be the case that you only get participation protection. Because again, the participation clause, Your Honor, we know is broad. The text, participate in any manner. It is broad. It cannot be the case that protection only attaches at the second of filing. What if somebody is interviewing with an attorney? What if a plaintiff is working with an attorney to prepare an EEOC charge? All of these things are to bring into fruition protected activity, right? Protection cannot. And we will undermine the fundamental purposes of the anti-retaliation provisions if we draw a bright line and say, oh, you get no protection until the second that that lawsuit is filed. You could get opposition protection. But doesn't our case in Booker already say that we have to trigger it by the instigation of statutory proceedings? Otherwise, we blur the distinction between opposition and participation? Well, Your Honor, here what I would say is it's not, when everyone knows that, and there's e-mail activity that says it's coming, it's forthcoming, the lawsuit's coming, it cannot be the case that protection is only triggered at the instance of the lawsuit filing. Do you have any case where a court has analyzed a case under the participation as opposed to the opposition clause before the formal filing of a complaint or with the EEOC or in court or somewhere? I think, Your Honor, when we look at the EEOC guidance and otherwise, and I'd have to go back and look at the case law, but I don't read Booker as, I think there's a lot of cases where the Title VII proceeding never comes, where there's an internal complaint, and those are all not participation. Here, everybody knows that the protected activity is coming. The Title VII lawsuit is threatened. It's made public. At that point, she provides information related to it. Everybody acknowledges, including the defendant, that it's forthcoming. To sit there and say, well, you get no participation for anything prior to suit undermines the wide purposes, and I think the Supreme Court talks about the wide purposes in Crawford, about the participation and opposition clauses and the purpose of them, which is to protect people to bring about Title VII and ADA lawsuits. But isn't that to protect people who are voluntarily calling out bad behavior? I mean, she said, I don't want to be a part of this. I don't want to. Well, what she also said to the attorney in advance of that was, save this for ammunition in your Title VII case. What if she actually used the language in her email, I do not want to participate in any lawsuit? Like that had actually been the language. Would that still count as participation? I think that would be closer, although, you know, I think it could, and let me give you a hypothetical about why it would, right? If somebody is involuntarily subpoenaed in to be a witness, they have protection, they're participating, right? There was no subpoena here. I don't disagree with that, Your Honor. What she said is she didn't want to be a party to the lawsuit. She never said she didn't or wasn't willing to be a witness to the lawsuit. I'm suggesting that the emails are pretty close to saying, I do not want to participate. That's a pretty fair assessment of it. Yeah, I think what she's saying is keep this confidential, use it as ammunition. She didn't want to raise her right hand necessarily and be a witness, but she was participating, right? She was giving over the emails. Nobody disputes that that was why. Nobody disputes that they were relevant to the claims. I mean, I know the defendants say that, but their witness admitted ultimately that it was relevant. I mean, we got those admissions out of him at page 275 and then 131 and 133 of his deposition, and that's page ID 1842, 1698, and 1700. So I think her intention was to give him ammunition and then allow him to individually develop that. Her intention was also to get legal advice about her upcoming exemption request. And yes, confidentiality was breached, but I don't think there's any question that they fired her because she gave documents that were relevant to the underlying cases. They put it in her writing. And they put it in writing that they knew at the time, and this was in the term letter, that everybody knew he was getting ready to bring this case, right? And I don't think you can cut off liability and say, oh, you only get protection at the instance that the suit is filed, right? How about being interviewed in connection with a title, you know, with an EEOC charge? Are we going to say that's not participation? I think— That's not investigation. Participation in the investigation. Once it's an EEOC charge where the EEOC is doing an investigation. Well, Your Honor, EEOC charges, just like federal lawsuits, don't just generate themselves out of thin air, right? There's always preparation activity that goes on in advance of that. Well, someone has to file a complaint with the EEOC to start it. Well, and— The EEOC, I mean, correct me if I'm wrong, but I don't think they investigate claims that aren't brought to them. They investigate claims that are brought to them, but that's also considered an administrative— That are brought to them. Right. It's also considered an administrative proceeding under the broad meaning of proceedings as the Supreme Court has interpreted them under Title VII. So when we look at this, I don't think you can cut off participation at that instance. And then, obviously, and I'm going to probably have to address this in reply, I think she's also got a heck of an argument under the opposition clause as well, but I'll save that, I suppose, for rebuttal unless there's other questions. Okay. Sounds good. Thank you, Your Honor.  Good morning. May it please the Court, my name is Mike Ensweiler. I'll be arguing on behalf of the Defendant Appellees. So in this case, it really boils down to protected activity and notice. And on those issues, Dr. DeShera must prove three things. Number one, and Your Honor hinted at this in Mr. Wee's presentation, she must prove an actual participatory act. Number two, or opposition. Number two, she must prove that her conduct was reasonable. We know that from the Nieswander case in which they based their claims. And number three, that SCP was on notice of both of these. She did not prove any of them. Now, with respect to the What do you make of the letter where she's fired? I mean, that does seem to suggest they thought she was participating. Well, Your Honor, the letter does not say that the basis for her termination was participating in a lawsuit. It said Causing a lawsuit, causing a lawsuit. Yeah, because you gave documents to an entity that had already sued us and was planning to sue us again. So the act of providing the confidential documents, that was the underlying factual basis of the termination, I'll agree. However, they did not have notice that she was participating in that lawsuit, that she was assisting with that lawsuit, and the termination of the letter does not say as much. Now, on that issue of actual participation, Your Honor, to raise a timing issue. The lawsuit in which she was Back up. Why does that letter not say what you said it doesn't say? Why does that letter not say we fired her because she was participating in the lawsuit? Well, it says that the reason she was terminated is she provided confidential documents related to the subject matter of litigation. Now, subject matter of litigation was very extraordinarily broad. These complaints were 100 pages plus. They had 28 claims. Only the second lawsuit had the statutory claims. So the subject matter of the lawsuits was very broad, and any email about COVID would relate to the subject matter. That doesn't mean any sender of an email with COVID in the subject line is participating in that case. In fact, Dr. Deshera proved to be the prime example of that. We know that from her communications. Again, you must be able to judge SEP's termination decision based on the information known to it at that time. And when her conduct was revealed, what she had to say in terms of explaining her behavior Remind me the timing between her sending the first email to Dieters and this letter. What's the gap? I can't remember. I want to say she began corresponding with Dieters in early August, August 7th perhaps. August 27th was when SEP says, We hear your medical concerns. We've heard you out. We don't plan to alter our approach. August 31, and at this point, August 31, there is no lawsuit. Beckridge 1 has been dismissed. Beckridge 2 is three or four days in the making. It hasn't happened yet. It was August 31 that she starts forwarding these confidential emails to Mr. Dieters. That's the timeline. And when this comes to light, because those emails are attached to Beckridge 2 as Exhibit 3, what we have here, she sends a letter of apology to explain what her intentions were. I'm just asking for the gap between August 31 and what you're now saying. What's that time? So August 31 was the providing of emails. Beckridge was filed on September 3. The apology letter is, I believe, September 3 or September 4. Excuse me, September 4 or 5. And then what's the termination letter date? October 4. Okay. Now, the apology letter is important because it explains what she was doing. She says that she first acknowledges, I understand these are private email exchanges. She says that she certainly did not approve their use as an exhibit in a lawsuit. She represents it was never her intent to seek litigation. It was never her intent to ask Dieters' law to represent her. She never signed any affidavits. This was her own characterization of her conduct, and SCP was entitled to rely on it. Now, you heard Mr. Weiss sign an email where she told Mr. Dieters, store this information as ammunition for your case. But that was an email we never had notice of. That wasn't provided until discovery in this case. That's immaterial to these issues. But we had even more representations defeating what Judge Larson referred to as the actual act of participation. You raised the timing issue. Becker's one didn't exist when you forwarded these emails on August 1st, and you're right about that. They have a timing problem. Going back to Niswander, the timing worked in favor of the plaintiff. Temporarily speaking, everyone agreed she was an active participant in this lawsuit. She had opted in as a class member. She was effectively a plaintiff. She was responding to a discovery request. But what the court said, this court said, is timing is not enough. You need to have an actual substantive act of participation that's reasonable as a matter of law. And on that issue of actual participation in this case, when counsel gets involved and they start exchanging emails, there's an email from Mr. Wiest that says Mr. Dieters wanted her to participate as a party and she declined. There's another email that said, I think I heard Mr. Wiest during his presentation said, well, she never said she didn't want to assist with it. Well, that's what counsel said. Email from counsel. Mr. Dieters has sought her assistance with his suit, but she will not do so and has instructed counsel to vigorously fight any subpoena. So she's representing her and her lawyers to SEP that she declined to participate and that she has no interest in assisting with it. That is on the first question. I'm sorry, just to take you back to something else. What's the case law say about investigation? I mean, does it have to be a public investigation? So in other words, let's just say there's allegations about some new hearing device and a group of lawyers think there are a lot of people that have been injured by these hearing devices and they start advertising, hey, if you've got this problem. So essentially you've got a private investigation going on, right? I mean, they want clients, they want to bring a class action, for example, but you could call it an investigation. How would this statute work if someone's working for someone, has some information about these hearing devices and why they don't work or something? So an employee of the company now contacts the law firm. Would that count or does the investigation have to be public? Do you know the answer to that? I don't know the direct answer to your question. I will say this. They did not invoke the investigation portion of the statute. We've cited the case law saying that it's the initiation of statutory proceedings that really triggers the participation clause. So that's one of very, very many flaws we think they have on the participation clause, that it's a threshold issue. But we don't think she committed an act of participation because she was telling us the opposite in real time. And one other point I want to make is, you know, under Niswander, the court said, and those were very similar facts, right? Provision of confidential emails. However, in that case, we had an opted-in plaintiff. We had discovery requests. And what this court said is, you know, typically in participation cases, we don't have to consider reasonableness because, generally speaking, if you are participating, you can't be terminated. But in this context, where now we have a competing interest on the employer's behalf in an orderly workplace, protecting their confidential information, now a reasonableness analysis is appropriate even on a participation claim. And that's a decision as a matter of law that this court needs to make. And what Judge Bunning found is that her conduct was not reasonable. The six-factor balancing test for reasonableness, he said only one factor even arguably supports her. It's the fact that she was, you know, in rightful possession of the emails because she was a recipient. But consider the other factors. Whether the documents were provided in response to a discovery request. We know the answer there, no discovery request. Could she have otherwise preserved these emails without breaching confidentiality? Well, of course she could. These emails were not going to disappear from her email account if she did not forward them at 221 a.m. on August 31st. She could have obviously preserved them in other ways. Another factor, the scope of the employer's privacy policies. As Judge Bunning found, her conduct violated multiple policies which she flouted by doing this of her own volition. Another factor, to whom the documents were produced. You know, Judge Bunning, he found this factor was essentially neutral at best and at worst to cut against her because Mr. Dieters is not a practicing lawyer. You know, I understand Dr. DeShera says, well, I thought he was a lawyer, but if you look at his email signature block that he's sending to Dr. DeShera, in his signature block he says, no current law license. So in any event, we know from Niswander that even providing documents in response to discovery to your own lawyers when you're a plaintiff in the case, that doesn't carry the day on reasonableness. So we don't think that factor supports her. And finally, the content of the documents. You know, Judge Bunning found there's a plausible basis for her to believe that her scientific letter is relevant to these issues, but the individual private email exchanges with the CEO of her employer in the hospital system, those aren't. So, you know, when you balance those factors, when you consider the competing interests here, there's no doubt SEP has a legitimate interest in maintaining its confidentiality of its information. And under Niswander, this conduct was unreasonable as a matter of law. Now, I do want to address briefly, because I think Mr. Weiss will get into it in his rebuttal, the opposition clause. It likewise fails for reasonableness for all the reasons I just mentioned. But, you know, it's based on the notion that she was opposing what she perceived as religious and disability discrimination based on how we were processing exemption requests. Now, the trigger for the opposition clause was explained by this court in Crawford v. Chipotle in a case authored by Judge Larson, and the governing principle is this. A plaintiff does not need to use magic language, but the plaintiff's language must be enough in a specific factual context to convey an accusation of discrimination and the basis for it. Now, the context of this case was a trend of vaccine mandates and many objections from many people based on their perspective. Dr. Deshera's language placed her in the perspective of, I have objections to this based on medical and scientific reasons. She sent a document intended to be seen as a professional document focused on my medical and scientific beliefs as a physician. And throughout her communications with SEP, all of which were either written or recorded, so there's no issue of fact about what she told SEP, throughout her communications, her perspective remained focused on medicine and science. And at no point did she suggest to SEP that her objection was based on perceived religious or disability discrimination. She never connected her objection to those protected activities, and that's what you need under Crawford. Just briefly, they cited a case in their reply, Gravy State Farm, a very recent case, I just want to address it briefly. That involved oppositional activity in the form of helping a friend pursue a statutory accommodation under the ADA. But the key evidence was that friend repeatedly told her supervisor that my friend, the plaintiff, is helping me do this. And the plaintiff, Gray, she testified she'd informed two other decision makers, I'm helping my friend pursue this statutory accommodation. There's no evidence of that in this case. There's no evidence that Dr. Deshara or anybody else told SEP that she was helping others pursue accommodations. So Gray does not apply to the record, and the context and the language in this case just didn't trigger the opposition clause. But again, even if she had opposed, even if this court finds she acted reasonably as a matter of law, which we don't think you get this far, it still fails for lack of notice. Because as Judge Bunning found, she never told anyone at SEP that she believed the policy was illegal due to some perception of religious or disability discrimination. So, in short, we don't think she can state a prima facie case for many reasons, any one of which is sufficient to affirm. And yet, I would submit that her claims still fail at burden shifting as well. We know from Niswander that dissemination of confidential information, even to your own attorneys, that's a legitimate non-discriminatory reason. And we know from Niswander that if the manager testified he fired because he believed you violated confidentiality policies, then the plaintiff can't show a pretext, can't overcome the honest belief rule. Here, Dr. Pritchard testified he believed she violated multiple policies, and Judge Bunning agreed with that as a matter of law. But even if both of them are incorrect, an employer is entitled to summary judgment, even if their conclusion is later to be shown incorrect. Standard for pretext is an error so obvious it's indicative of intentional wrongdoing. No such evidence exists in this case. Ultimately, these cases on protected activity, notice they typically involve vague conduct, so the court must grapple with whether the conduct in the context is enough. But we're not dealing with vagueness in this case. The record contains explicit representations from Dr. Deshera and her counsel that negate protected activity, negate notice, in support of finding that what she did in this case was not reasonable. And SCP was entitled to rely on those representations when determining whether she could be lawfully terminated. You know, Ms. Can I just loop this back to the letter explaining why she's being discharged, which I think you have to concede is a troubling fact for you. Is it your argument then that, sure, they said, we're firing you because you released our confidential information to a lawyer who was suing us, but you didn't know that the lawsuit was going to be about Title VII and ADA claims, and therefore, you know, if they were suing you for breach of contract, that we would not be here, right? I think that's correct, yes. So is that the nub of your argument with respect to that dot-firing document? So the dissemination of the confidential information, that was the basis of the termination. What we are saying is that— Right, but then it goes on. I mean, you can't ignore the rest of the sentence that says, you know, in a lawsuit to someone who had sued us before and was going to sue us again. So is it your argument that, yeah, this lawsuit contained a lot of things, but we didn't know it was going to contain Title VII claims? Our argument is that we did not—I apologize. Yeah, no, go ahead. Our argument is that we are not on notice that she was participating in or assisting with the statutory claims in that lawsuit. Our argument is that, you know, even if you accept, you know, their characterization of this email, even if we accept the premise that we stated in a letter, you committed an act of participation in the lawsuit and you're being fired. That gets them past Issue 1, which is an actual act of participation. Can I just pause you there on that point because I'm not sure I agree with that. I've been thinking about this point a lot. I think quite often that's why we have whistleblower statutes and that's the usual way to protect this. But it's not unusual if you disclose secrets in an organization that are damning to the organization, it will lead to litigation. That's actually a pretty likely thing in a lot of settings. And it seems strange to me to say that that counts as participation. It's a but-for cause of what happened, maybe. But that doesn't prove participation when the person says, I'm disclosing this stuff secretly, I don't want to be involved. You know, it's a bombshell. The lawyer's thrilled. It helps them file a lawsuit. But I don't know that that proves participation. I agree with you on that. I thought you might. I'm really saying it to the other side so they can answer the point. But I, yeah, I'm not sure. I mean, I understand why the language is used from the letter by them, but I actually think that's a pretty normal circumstance. And, of course, the employer's unhappy. You broke our rules, and we now are being sued. Yeah, this is terrible. We're not happy about this. Does that prove the retaliating because of participation in a lawsuit? If it does, that's going to apply to a lot of cases. I see them outside of whistleblower cases. May I make one comment, Judge? Yeah. I agree with you. I don't think that proves participation. But the point I was getting to is even if we had admitted in the letter, we think you participated in the lawsuit and you're being fired. It does not solve their problem on the second issue, which is that this court must decide that what she did was reasonable as a matter of law. It does not speak to that at all. Okay. Thank you very much. Thank you, Your Honor. Any rebuttal? A couple of points, Your Honor. And this is where I think I want to begin. Dr. Pritchard admits under oath a number of things. And they don't want to grapple with it, but I think it really sort of ties this all together. He admits under oath that, quote, it was not a huge assumption that the documents were attached to further the Title VII and ADA claims. That's at 290 page ID 1857 of his deposition. He admits under oath that the only thing, and this is the author of the term letter, who's talking about subject matter, that the only thing he knew about the suit was that it surrounded the exemption process for legally permitted exemptions. That's at 192 and then 195 to 196 of his deposition, 1759 and 1762 to 1763. And we know that Dr. DeCiara provided the documents in part to get legal advice, but also to provide ammunition for the lawsuits. Now, did she change her mind about participating later when she was drug into this? She did, and yet, one can be a witness. You say about Judge Kethledge's language from Aldridge that you have to be directly involved in litigation. And it does seem quite strange to say what she did was directly involved in litigation. Well, at the time that she provided the lawsuits, and this is in the record, we've got Dr. Grunkmeier's deposition where he is conveying, or I'm sorry, his declaration where he is conveying the request, and this is at DOC 53-1, page ID 3265 to 3267, the request by the firm for these emails to further this lawsuit. And that's, I believe, on the 30th. The next day she's providing the documents. I think that is direct involvement as a witness. And then I go back to two other things, including on the notice issue. One, we've talked about the termination letter, in which they put in writing. So what's your response to the point I was making that, you know, the classic whistleblower, we have whistleblower laws for a reason. They protect a whole different set of policies. They work quite differently. This is anti-retaliation. Isn't it very often going to be the case when someone discloses secretly bombshell information that it's going to lead to litigation? So isn't that always going to be a retaliation participation case? I think. It just seems like it's going to dwarf that whole area of law. That doesn't make sense to me. Your Honor, this court has put limits on it, including a nice one, where it's got to be related to the underlying discrimination claims, right? I mean, it can't just be I'm just giving you confidential information. It's got to be related to the claims. And yet, in every instance, we've got anti-retaliation provisions. You think it's enough that they fired because you ceded this litigation. And they admit that that's why they fired her. That's correct. I'm just telling you that's the typical, that's the prototypical whistleblower case. And whistleblowing is participation in any manner. I mean, again, we're talking about broad participation clauses. One of the things that's troubling about this, and I didn't hear it from my friend on the other side, is they were aware that we took the position she was participating in the lawsuit prior to terminating her. And I'm at Dock 4453, page ID 1021 to 1022. There's an email from me to their lawyers on September 20th saying, if you're going to do something to her, it's a Title VII retaliation and or discharge against public policy problem. So this notion that they were somehow not on notice, it's absurd on this record. They were on notice, and they admit that they were on notice. Their decision maker admits that he was on notice. And yet, you know, we hear this position. Like, didn't she get her accommodation met, like, shortly after that email or shortly before that email was sent? I think it was right after. So, you know, they might have thought you were saying, like, if you fire her for her religious objection, if you don't give her this accommodation and you fire her, that's going to be a problem. But they're like, oh, we're good because we gave her the accommodation. Well, Your Honor, if you look at what we said, it was for suggesting or implying that the organization intends to seek some sort of punitive action against her for seeking legal counsel concerning her rights and obligations. So we're not just talking about this was not in relation to her accommodation. It was in relation to her interactions with the Dieter's firm. And they were told about that in this letter. So, you know, this isn't a notice issue. And I'm not even sure we're really in a prima facie case because I would submit that this is a smoking gun letter of direct evidence of retaliation under Title VII. And we know we don't even get into the whole burden shifting issue when we've got direct evidence, right? And I want to leave here, Your Honor, lawsuits, EEOC charges, they don't generate out of thin air. There has to be some protection in the lead-up. I'm not talking about you're making some internal complaint to an employer. I'm talking about you are actively participating in the run-up. And, by the way, it's used in this instance in which the defendant decision-maker says it's, quote, that the documents were attached to further the claims. In this instance, I submit that it's participation under the broad reading of the participation clause. Thank you, Your Honors. Thanks to both of you for your helpful briefs and arguments. We appreciate it.